IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Courtney Lyles,<br><br>    Plaintiff,<br><br>v.<br><br>Bryan Sterling, Michael McCall, NFN Lewis, Florence Mauney, Stephen Claytor, NFN DeGeorges, NFN Bennett, NFN Swinger, NFN Valero, NFN Tucker, NFN Mitchell, Officer Edgerton, NFN Robinson, Warden Cartledge, NFN Miskinis, Robert Olsen, and Tashonda Caldwell,<br><br>    Defendants. | C/A No. 9:17-149-CMC<br><br>**OPINION AND ORDER** |

    Courtney Lyles ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brought this action against Bryan Sterling, Michael McCall, NFN Lewis, Florence Mauney, Stephen Claytor, NFN DeGeorges, NFN Bennett, NFN Swinger, NFN Valero, NFN Tucker, NFN Mitchell, Officer Edgerton, NFN Robinson, Warden Cartledge, NFN Miskinis, Robert Olsen, and Tashonda Caldwell (collectively "Defendants") alleging violation of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as state law claims. ECF No. 1. This matter is before the court on Defendants' motion for summary judgment. ECF No. 33. Because Plaintiff is proceeding *pro se*, the Magistrate Judge entered an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising him of the importance of the motion and the need to file an

adequate response. ECF No. 34. Plaintiff filed a "Motion to Dismiss Defendants motion for Summary Judgment."[1] ECF No. 41. Defendants filed a reply. ECF No. 42.

On February 15, 2018, the Magistrate Judge issued a Report and Recommendation, recommending Defendants' motion for summary judgment be granted. ECF No. 44. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. On March 8, 2018, Plaintiff filed objections to the Report. ECF No. 46. Defendants filed a reply on March 21, 2018. ECF No. 47. This matter is ripe for the court's review.

I. **Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

---

[1] As Plaintiff does not seek summary judgment, but rather a jury trial, the court has treated Plaintiff's filing as his opposition to Defendants' motion for summary judgment.

2

## II. Discussion

The Magistrate Judge recommends granting Defendants' motion for summary judgment as to all federal claims, other than the claim for lost property, based on failure to exhaust administrative remedies. ECF No. 44 at 3-9. With respect to the lost property claim, as to which Plaintiff did exhaust administrative remedies, the Magistrate Judge recommends dismissal because South Carolina has an adequate post-deprivation remedy for an alleged deprivation of property. *Id.* at 12. The Report notes Plaintiff's due process rights were not violated, even if a correctional officer did lose or mishandle Plaintiff's property. Further, the Report recommends declining to exercise supplemental jurisdiction over any state law claim for alleged loss of property, to allow Plaintiff to pursue such a claim in state court. *Id.* at 14, 16.

Plaintiff asserts several objections to the Report. First, Plaintiff appears to object to the *Roseboro* Order's time granted to respond to summary judgment, because he receives legal mail "week(s) after the institution receives it that makes it hard to properly produce an adequate argument to the courts." ECF No. 46 at 2. Plaintiff notes he did not receive a ruling on his request for extension to respond to Defendants' summary judgment motion and "simply did the best that I could and submitted what I had." *Id.* at 4.[2] Plaintiff's second objection argues "serious injury cases should be taken into special consideration," apparently contending there should be an exception to the exhaustion of administrative remedies requirements for cases of serious injury. *Id.* at 4. He also alleges he was not informed of the requirements in time to file an informal request for resolution, and was in lock-up or being transferred for medical

---

[2] The court notes two pages of Plaintiff's objections seem to be out of order – page four appears to follow page two substantively. The court cites to quotations on the pages as filed.

3

procedures during that time. *Id.* at 3 ("Statute of limitations had expired before surgery."). Third, Plaintiff argues Defendants are not entitled to summary judgment on his property claim because he was not present for the packing of his property, and his legal material and other personal property remain missing. He contends he is unable to "present evidence that doesn't exist" regarding his allegedly lost property.

### a. Timing

Plaintiff appears to argue he had insufficient time to research and submit a full response to Defendants' motion for summary judgment and limited time for objections to the Report. The court notes Plaintiff requested an extension for his response to the summary judgment motion, which was granted, but Plaintiff asserts he never received the order and so assumed his response was due within the time frame specified by the *Roseboro* Order.[3] Plaintiff appears to have submitted his response within the original time frame. He did not request an extension for his objections. Finally, although Plaintiff notes he had limited time to file his response to the motion for summary judgment and objections to the Report, he does not allege he has more information to present.

### b. § 1983 Claims unrelated to Property

#### i. Administrative Remedies

Plaintiff next argues he was unable to exhaust administrative remedies as to his § 1983 claims alleging failure to protect him from an inmate attack and deliberate indifference to

---

[3] The docket shows a Text Order granting Plaintiff's motion for extension of time was "placed in U.S. Mail to Edwin Wright." ECF No. 39. This lends credence to Plaintiff's contention he did not receive the extension order.

serious medical needs because he was being moved frequently between medical unit and lock-up, and transported to outside facilities for medical care. He contends he was unable to research his claims or attempt to resolve them informally within the allotted time frame.

"The doctrine [of exhaustion of administrative remedies] provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006); *see also* 42 U.S.C. § 1997e(a). A court may not excuse a failure to exhaust, even to take into account special circumstances. *Ross v. Blake*, 578 U.S. __, 136 S.Ct. 1850, 1856 (2016). However, the PLRA does contain one exception to mandatory exhaustion: the administrative remedies must be "available" to an inmate. *Id.* at 1858. Administrative remedies are unavailable when they operate as a simple dead end, are so opaque they are incapable of use, or when prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation. *Id.* at 1859.

Plaintiff does not argue he exhausted these claims, only that he was unable to do so because of his medical condition and housing during the time immediately following the attack. Defendants submitted an affidavit from Sherman Anderson, Chief of the Inmate Grievance Branch of the Office of General Counsel for South Carolina Department of Corrections, who detailed the grievance process. ECF No. 33-19. The first step, the informal resolution, requires inmates to submit a Request to Staff Member Form or Automated Request to Staff Member (available via kiosk) within eight working days of the incident. *Id.* at ¶ 5. Plaintiff argues he was in the Restricted Housing Unit ("R.H.U.") after his attack, where he asked officers for Inmate Staff Request forms and was told they did not have such forms, and he would have to use the kiosk machine. ECF No. 41 at 9. He states he "attempted to do immediately after the

5

injury, once I started moving from Institution to Institution all of that was not able to be accomplished." *Id.* The timeline advanced by Defendants, and supported by affidavits and medical records, shows Plaintiff remained in the Perry R.H.U. after the incident for approximately three days, before being taken to Kirkland Correctional Institution for x-rays, an oral surgeon's office in Lexington for consultation, Lexington Day Surgery for surgery on his fractured jaw, and Broad River Correctional Institution following surgery. ECF Nos. 33-1 at 2-3; 33-7 – 33-13 (medical records).

Based on these facts, the court is unable to determine whether administrative remedies were available to Plaintiff during the eight days following the attack. While jail officials allegedly informed Plaintiff no forms were available, it is unclear whether Plaintiff had access to a kiosk, and whether his medical condition was such that use of a kiosk was feasible. Therefore, Defendants have failed to meet their burden of showing that administrative remedies were available to Plaintiff, and that he failed to exhaust them.

As the court declines to grant summary judgment based on failure to exhaust, it will review *de novo* Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claims for failure to protect and deliberate indifference to serious medical needs.

ii. Failure to Protect

A prison official violates the Eighth Amendment on a failure to protect claim when two requirements are met: the deprivation must be sufficiently serious (the inmate must show he is incarcerated under conditions posing a substantial risk of serious harm), and the prison official must have shown deliberate indifference to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions."

*Brown v. North Carolina Dept. of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010). An official has shown deliberate indifference only if the official knows of and disregards an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. "In other words, the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown*, 612 F.3d at 723.

In this case, Plaintiff suffered a serious injury when he was attacked by another inmate. However, there is no evidence any prison official knew of and disregarded an excessive risk to his safety. Plaintiff does not allege he informed a prison official he was worried for his safety while delivering meals and acknowledged he "never met Im. Grier, actually didn't know his name until I received this summary judgment and couldn't identify him myself if I saw him." ECF No. 41 at 4. Nor does Plaintiff allege any officer was present during the attack and failed to take action.[4] Plaintiff does allege negligence on the part of the prison officials for failing to secure a dorm wing door and allowing another inmate to enter the sallyport.[5] The officers' affidavits explain Officer Russell observed Plaintiff being struck by Grier, immediately responded to the incident along with other officers, and Plaintiff was taken to medical for treatment. ECF Nos. 33-2, 33-3, 33-4. Although there are conflicting accounts, there are no allegations that officers were made aware of a likely attack or observed the attack and refused to interfere.

---

[4] Plaintiff challenges the assertions of Officers Russell and Root that Officer Russell was present and observed the incident. Rather, he contends, neither was present, and his attacker had fled the area before any officers arrived. ECF No. 41 at 3-4.

[5] The court notes § 1983 liability does not lie in mere negligence. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The court finds Defendants are entitled to summary judgment on Plaintiff's failure to protect claim. Therefore, this claim is dismissed with prejudice.

### iii. Deliberate Indifference to Medical Needs

A deliberate indifference to serious medical needs violates the Eighth Amendment, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). However, an "inadvertent failure to provide adequate medical care," or negligence in diagnosing or treating a medical condition, does not state a claim under the Eighth Amendment. *Id.* at 105-06; *see also Wester v. Jones*, 554 F.2d 1285, 1285 (4th Cir. 1977) (holding failure to exercise sound professional judgment in negligently examining and making an incorrect diagnosis did not violate the plaintiff's Eighth Amendment rights, even though inmate lost sight in one eye).

It is clear Plaintiff suffered a serious injury in the inmate attack. However, he fails to show deliberate indifference to this serious medical need as he received treatment immediately after the attack on October 30, 2015, and this treatment was ongoing until Plaintiff's injuries were resolved. To the extent Plaintiff argues he was not diagnosed with a fractured jaw in a timely manner, the court finds the approximate three day delay in diagnosis to be negligent at most. There is no evidence any prison official or medical staff intentionally withheld treatment; in fact, he was examined immediately and scheduled for a dental evaluation on November 2, 2015 (the Monday after the attack). ECF No. 33-8. Plaintiff was again examined the day after the attack, and was able to open and close his mouth with "only slight discomfort." *Id.* Two

days later, Plaintiff was seen in the doctor's clinic and referred to the dentist the same day. ECF No. 33-9 at 7. The dentist ordered x-rays to be taken that afternoon, and Plaintiff was transferred to Kirkland Correctional Institution for that purpose. The x-rays revealed a right mandibular fracture. ECF No. 33-10. The oral surgeon was unable to see him until Thursday, November 6, when Plaintiff was evaluated and surgery was undertaken on November 10. ECF No. 33-12. After surgery, Plaintiff was provided with pain medication, oral antibiotics, an oral antiseptic, and two forms of liquid meals. When Plaintiff complained of intestinal discomfort following liquid meals, he was provided treatment for this discomfort and prescribed a soft diet. ECF No. 33-9.

In his response to Defendants' motion for summary judgment, Plaintiff argues he discussed his lactose intolerance with the dorm nurses on December 6, 2015, but the medication wasn't ordered until December 25, 2015. ECF No. 41 at 6. He contends his "only means to eat was by cutting and mashing up food for an [sic] substantial amount of time." *Id.* at 7. However, it is clear his concerns regarding his food were addressed when he complained on December 1: the medical notes reflect the Boost and Ensure caused stomach pain and diarrhea, but his "roommate gets a soft diet and mashes up food for him to eat." ECF No. 33-9 at 3-4. A soft diet was ordered, and it was noted Plaintiff continued to "mash it up with a spoon like he has been doing." *Id.* at 4. Lactaid drops were also ordered – a message was sent to the pharmacy for consideration, and the cafeteria was notified about the new diet. *Id.*

Based on these facts, the court finds no violation of Plaintiff's Eighth Amendment right regarding deliberate indifference to serious medical needs. Plaintiff received substantial medical care regarding his fractured jaw, and any delay in diagnosis and/or treatment did not

rise to the level of deliberate indifference. Defendants are entitled to summary judgment on this claim.

### c. Property Claims

Plaintiff objects to the Report's conclusions regarding his property claims. ECF No. 46 at 5. He notes he was unable to be present during the packing of his property, and someone should be "held responsible for the loss of legal material that could have been used to possibly vindicate Plaintiff's conviction[.]" *Id.* He also asserts he never received some of his personal property that he was allowed to have "due to year(s) of good behavior." *Id.*

Plaintiff appears to have exhausted his administrative remedies regarding his § 1983 property claim. However, because South Carolina has an adequate post-deprivation remedy for an alleged deprivation of property, Plaintiff's Due Process rights were not violated even if a correctional officer lost or mishandled his personal property (which Defendants deny). *Parratt v. Taylor*, 451 U.S. 527 (1981) (holding negligent deprivations of property do not violate Due Process rights provided the state makes available a meaningful post-deprivation remedy); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (applying *Parratt* to intentional deprivations of property); *see* S.C. Code § 15-78-10, et. seq. (South Carolina Tort Claims Act ("SCTCA")) (providing state law remedy for property deprivation). To the extent Plaintiff claims to have alleged a cause of action under the SCTCA, such a claim must be alleged against the South Carolina Department of Corrections ("SCDOC"), not the individual Defendants named in this suit. Because Eleventh Amendment immunity has not been abrogated in this federal court, Plaintiff must sue the SCDOC in state court. *See Steinke v. South Carolina Dept. of Labor, Licensing and Regulation*, 520 S.E.2d 142, 152 (S.C. 1999) ("The South Carolina Tort Claims

Act, which provides the exclusive remedy in tort against a Department, is a limited waiver of governmental immunity [in state court]."); S.C. Code Ann. § 15-78-70.

Therefore, Plaintiff's § 1983 property claims are dismissed with prejudice. Any remaining state claims are dismissed without prejudice.

### III. CONCLUSION

Having conducted a *de novo* review of the Report and underlying motion and related memoranda, and having fully considered Plaintiff's objections, the court declines to adopt the Report as to the § 1983 non-property claims, but adopts the Report as to the § 1983 property claims and any state law claims. The court grants summary judgment for Defendants on the merits of both the failure to protect and deliberate indifference to medical needs claims. Defendants' motion for summary judgment (ECF No. 33) is granted as to all federal claims, and they are dismissed with prejudice. Any remaining state law claims are dismissed without prejudice.

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
April 11, 2018